1  John H. Weston (SBN: 46146)
   johnhweston@wgdlaw.com
2  G. Randall Garrou (SBN: 74442)
   randygarrou@wgdlaw.com
3  Weston, Garrou, Walters & Mooney
   12121 Wilshire Boulevard, Suite 900
4  Los Angeles, California 90025-1176
   Telephone: (310) 442-0072
5  Facsimile: (310) 442-0899

6  Attorneys for Plaintiff

7  **UNITED STATES DISTRICT COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

10  SOLID HOST, NL )  Case No: **CV 08-5414 MMM (Ex)**
                   )
11       Plaintiff, )  **REPLY IN SUPPORT OF MOTION**
                   )  **FOR LEAVE TO AMEND**
12       vs.       )
                   )  **Hrg. Date:** August 17, 2009
13  NAMECHEAP, INC., etc., *et al.*, )  **Hrg. Time:** 10:00 am
                   )  **Judge:** Margaret M. Morrow
14       Defendants. )
                   )
15

PRG7362.DOC

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

I. THE PARTIES ARE IN AGREEMENT THAT THE NEWLY ALLEGED CLAIM AGAINST ENOM UNDER WASHINGTON'S CPA IS BASED ON ENTIRELY NEW (AND PREVIOUSLY UNKNOWN) FACTS AND STATES AN ENTIRELY NEW CLAIM RATHER THAN BEING A REPACKAGING OF THE PREVIOUSLY REJECTED CLAIM ................................................................................ 1

II. TO THE EXTENT ENOM's OPPOSITION IS BASED ON AN ASSERTION THAT PLAINTIFF HAS REPEATEDLY FAILED TO CURE DEFICIENCIES BY AMENDMENT, ENOM OBVIOUSLY MISPERCEIVES THE RELEVANT DOCTRINE ........................................ 2

III. TO THE EXTENT ENOM's OPPOSITION IS BASED ON THE ASSERTION OF FUTILITY, IT IS BOTH MISPLACED AND SHOWS AN INCREDIBLE INSENSITIVITY TO A FLAWED SYSTEM INJURIOUS TO THE PUBLIC WHICH IT ITSELF HAS CREATED BY ITS CONSCIOUS AND DELIBERATE CHOICE TO VIOLATE THE REQUIREMENTS OF THE ICANN AGREEMENT ........ 4

    A. eNom Either Completely Misunderstands The Application and Purpose Of The ICANN Agreement Or Is Disingenuous In Its Description Of That Agreement To This Court ................................... 4

    B. eNom's Assertion That It Cannot Be The Proximate Cause Of Any Injury To Solid Host By Virtue Of Its Violation Of The ICANN Agreement Is Utterly Without Merit ....................................... 7

    C. eNom's Assertion of NameCheap's Awareness of the Requirements of The ICANN Agreement Cannot Possibly Relieve eNom Of Liability As A Matter Of Law ................................ 7

    D. eNom's Wrongful Conduct In Routinely Violating The ICANN Agreement is Unquestionably Harmful to the Public and Meets The Requisite Elements For An "Unfair Or Deceptive Practice" Under Washington's CPA ....................................................... 8

IV. PLAINTIFF'S REALLEGING ITS PREVIOUSLY REJECTED CLAIM IS SOLELY FOR PURPOSES OF PRESERVING IT FOR APPEAL ............................................................................................... 14

CONCLUSION ..................................................................................................... 15

PRG7362.DOC

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Foman v. Davis*
   371 U.S. 178 (1962) ..................................................................................1, 2

## STATE STATUTES

RCW § 19.80.010 .............................................................................................11

RCW § 19.89.920 .............................................................................................13

## STATE STATUTES

ICANN Registrar Accreditation Agreement

   3.7.7..............................................................................................*passim*

   3.7.7.3 ...........................................................................................*passim*

PRG7362.DOC

# INTRODUCTION

The primary ground asserted by defendants eNom, Inc. and Demand Media, Inc. (hereafter collectively "eNom") in support of their Opposition to Plaintiff's Motion For Leave to File Third Amended Complaint (Opposition) is that of "futility," based on all the same grounds they would assert in a motion to dismiss under Rule 12 (b)(6). (I.e., there are no allegations of any of the more traditional grounds for opposing leave to amend such as, e.g., undue delay, bad faith, or undue prejudice.) However, eNom does appear to assert one other recognized ground, that of "repeated failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). As will be shown, neither of these asserted grounds are well taken.

# I

# THE PARTIES ARE IN AGREEMENT THAT THE NEWLY ALLEGED CLAIM AGAINST ENOM UNDER WASHINGTON'S CPA IS BASED ON ENTIRELY NEW (AND PREVIOUSLY UNKNOWN) FACTS AND STATES AN ENTIRELY NEW CLAIM RATHER THAN BEING A REPACKAGING OF THE PREVIOUSLY REJECTED CLAIM

eNom's first point of argument (its Point A at p. 2 of its Opposition) falls into the category of "beating a dead horse." The parties agree that plaintiff's newly alleged claim against eNom under Washington's CPA is based on entirely new (and previously unknown) facts, thereby stating an entirely *new* claim, rather than being a restatement of the previously rejected claim. eNom takes issue with plaintiff's statement in its moving papers that this new claim could likely have been filed

1

PRG7362.DOC

without leave of court. However, rather than litigating that proposition, plaintiff expressly stated that "regardless of whether the proposed amendment as to eNom is or isn't within the scope of this Court's order allowing leave to amend, out of an abundance of caution, and to avoid controversy, plaintiff has elected to proceed by a motion seeking leave of court." Motion (Doc. 76) at p. 2, lns. 11-13. Accordingly, plaintiff is in agreement that the Court should consider its motion to add this new claim against eNom as it would any other motion for leave to amend to add a new claim based on entirely newly discovered facts.

## II

**TO THE EXTENT ENOM's OPPOSITION IS BASED ON AN ASSERTION THAT PLAINTIFF HAS REPEATEDLY FAILED TO CURE DEFICIENCIES BY AMENDMENT, ENOM OBVIOUSLY MISPERCEIVES THE RELEVANT DOCTRINE**

As noted *supra*, pursuant to the Supreme Court's decision in *Foman v. Davis*, a recognized ground for denying a motion for a leave to amend is "repeated failure to cure deficiencies by amendments previously allowed." *Id.* eNom has twisted that requirement into an entirely new and different requirement implying that leave to amend should not be granted even where the amendment is based on entirely new facts and is not simply a repleading of prior facts in order to plead around a prior dismissal order. Here, there have been no "repeated" attempts to redraft a pleading to conform to prior orders finding a deficiency. In fact, given eNom's position that the new claim against it is entirely unrelated to the one this Court recently struck (and therefore that a motion for leave is required), eNom can hardly take the position that this is even the *first* attempt to redraft a pleading in order to comply

PRG7362.DOC

with a prior dismissal order. *A fortiori*, it is not a "repeated" attempt to comply with a prior order finding a deficiency in the complaint.

Where, as here, new facts are discovered during the course of litigation that establish the basis for entirely new claims, that is a perfectly appropriate basis for seeking leave to amend to add such claims. Specifically, until very recently, plaintiff had absolutely no idea that eNom and NameCheap were routinely violating the requirements of ¶ 3.7.7 of the ICANN Registrar Accreditation Agreement (ICANN Agreement) by not entering into contracts required by that paragraph of the ICANN Agreement which, were such contracts entered into, would impose upon NameCheap, as a Registered Name Holder, certain obligations and potential liabilities to 3rd parties (such as plaintiff here) claiming to have been injured by those for whom NameCheap provides a shield of anonymity.

Certainly now that the plaintiff has, for the first time, become aware of the great likelihood that eNom has routinely violated the ICANN Agreement by failing to require its reselling Registered Name Holders to sign the contracts required by the ICANN Agreement, there can be no assertion that an attempt to amend the complaint to so allege is improper. eNom's hyperbole that "there are limits[,] enough is enough," is in incredibly poor taste given that it has presumably known the true facts all along and silently sat back hoping that plaintiff would not discover its wrongful conduct.[1]

---

[1] As the Court will recall, as recently as the litigation over NameCheap's motion to dismiss, plaintiff believed that such contracts likely existed as they were required by the ICANN Agreement. This Court, as well, so concluded, as that was the very basis for its refusal to grant NameCheap's motion to dismiss plaintiff's third party beneficiary contract claim against NameCheap. It was only since that time that undersigned counsel was informed by NameCheap that there *was no* such contract between NameCheap and eNom. Moreover, eNom has refused to confirm or deny this asserted fact, saying it would await formal discovery efforts before responding. Based on those interactions, it became clear that an amendment of the complaint was warranted.

3

PRG7362.DOC

# III

**TO THE EXTENT ENOM's OPPOSITION IS BASED ON THE ASSERTION OF FUTILITY, IT IS BOTH MISPLACED AND SHOWS AN INCREDIBLE INSENSITIVITY TO A FLAWED SYSTEM INJURIOUS TO THE PUBLIC WHICH IT ITSELF HAS CREATED BY ITS CONSCIOUS AND DELIBERATE CHOICE TO VIOLATE THE REQUIREMENTS OF THE ICANN AGREEMENT**

**A.   eNom Either Completely Misunderstands The Application and Purpose Of The ICANN Agreement Or Is Disingenuous In Its Description Of That Agreement To This Court**

In the second full paragraph of page 6 of its Opposition, eNom makes numerous statements mischaracterizing both the functioning and purpose of certain aspects of the ICANN Agreement. Most fundamentally, eNom asserts that "there are no 'protections contemplated by ¶ 3.7.7.3.'" (Opp. at p. 6, ln. 19.) This demonstrates a fundamental misunderstanding of the purpose of the ICANN Agreement.

Specifically, ICANN was established by the Department of Commerce because it was believed there was need for a body to supervise domain name registrations in order to serve the considerable public interest in having an effective and responsible system for the registration of domain names. The ICANN Registrar Accreditation Agreement establishes a variety of requirements which registrars must adhere to in order to maintain their accreditation to operate as registrars. One of the requirements which ICANN obviously felt important in order to protect the public was to require registrars such as eNom to comply with the requirements of ¶ 3.7.7. That paragraph states:

4

PRG7362.DOC

> "3.7.7 Registrar shall require all Registered Name Holders to enter into an electronic or paper registration agreement with Registrar including at least the following provisions:
>
> . . .
>
> > 3.7.7.3 Any Registrered Name Holder that intends to license use of a domain name to a third party is nonetheless the Registered Name Holder of record and is responsible for providing its own full contact information and for providing and updating accurate technical administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the Registered Name. **A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm**." (Emphasis added.)

By its express terms, the emphasized portion of ¶ 3.7.7.3 above was obviously intended to create a system where Registered Name Holders who provide anonymity services would have certain responsibilities (and potential liabilities if they failed to exercise those responsibilities) in the event that their customers committed harm by wrongful use of a registered name. The two corporate defendants herein have apparently concluded that they can avoid the responsibilities ICANN intended them to accept simply by failing to enter into the contracts with each other which ICANN requires them to enter into. eNom's resellers (such as defendant NameCheap) benefit because they can sell privacy services free of any risk or responsibility. eNom in turn benefits, because more resellers are willing to sign with eNom than

1  other Registrars who operate properly pursuant to the requirements of the ICANN
2  Agreement.

3        ICANN's clear dual purposes for its ¶ 3.7.7.3 was to deter wrongful use of
4  internet domains in the first instance and, failing that, to protect persons harmed by
5  wrongdoers for whom Registered Name Holders provide anonymity services.
6  Consequently, eNom's refusal to require its resellers who provide anonymity
7  services to enter into contracts containing the provisions of ¶ 3.7.7.3 of the ICANN
8  Agreement is most definitely a cause of harm to plaintiff, as it prevents plaintiff
9  from obtaining the third party beneficiary protections intended for plaintiff by
10 ICANN (and, by an extension of reasoning, by the U.S. Government through its
11 Commerce Department).  Additionally, it is likely that sophisticated hackers like
12 Doe are well aware of NameCheap's policy of not readily disclosing the identity of
13 their customers (which NameCheap is emboldened to do because, without having to
14 sign an ICANN-compliant contract, there are no obvious adverse consequences to it
15 for failing to disclose such information).  It is eNom's refusal to comply with the
16 requirements it agreed to under the ICANN Agreement that makes all this possible.

17       In any event, eNom also resorts to and relies on the same circular reasoning
18 unsuccessfully asserted by Namecheap in its motion to dismiss and rejected by this
19 Court, i.e., that the ICANN Agreement does not directly create any third party
20 beneficiaries.  Opp. at p.6, lns. 10-11.  That assertion, though, misses the mark.

21       Rather, since ICANN has no way to deal directly with Registered Name
22 Holders, it ensures that third party beneficiary status will be available to injured
23 victims of these Registered Name Holders' customers (such as plaintiff) by
24 imposing upon *Registrars* the obligation to enter into contracts with their Registered
25 Name Holders who provide privacy services.  Again, eNom would simply have this
26 Court turn a blind eye to the overall purpose of these relevant paragraphs of the
27 ICANN Agreement.
28

6

**B.   eNom's Assertion That It Cannot Be The Proximate Cause Of Any Injury To Solid Host By Virtue Of Its Violation Of The ICANN Agreement Is Utterly Without Merit**

As noted above, it is eNom's violation of ¶ 3.7.7 of the ICANN Agreement which has deprived plaintiff of the third party beneficiary status which it otherwise would have had if eNom had properly entered into a contract with NameCheap containing the provisions required by the ICANN Agreement.

**C.   eNom's Assertion of NameCheap's Awareness of the Requirements of The ICANN Agreement Cannot Possibly Relieve eNom Of Liability As A Matter Of Law**

At p.7, lns. 1-9 of its Opposition, eNome asserts the remarkable proposition that:

> "Because NameCheap knew of the provisions by virtue of its own agreement with ICANN, eNom's alleged failure to include the provisions in its agreement with NameCheap cannot be the proximate cause of any injury that Solid Host may have suffered by reason of NameCheap's alleged failure to turn over quickly the identity of Doe. If NameCheap did not act quickly to turn over the identity of Doe, it did so at its own peril."

eNom's reasoning set forth above flies directly in the face of this Court's ruling on NameCheap's motion to dismiss plaintiff's third party beneficiary claim against NameCheap. Contrary to eNom's suggestion, this Court ruled that the mere fact that NameCheap, as an occasional Registrar, was a signator to the ICANN Agreement, did *not*, *ipso facto*, impose any duties on it when it acts in its distinct capacity as a Registered Name Holder. Indeed, the ICANN Agreement is not set up to *directly* impose *any* duties on Registered Name Holders. Rather, it imposes

7

PRG7362.DOC

duties directly only on Registrars who, in turn, are supposed to enter into contracts imposing duties on Registered Name Holders.

Accordingly, and as this Court ruled, NameCheap's failure to act quickly to turn over the identity of Doe did not subject it to any third party contractual liability whatsoever, absent proof of a contract it entered into with eNom *imposing* obligations on it and liabilities upon it if it fails to discharge those duties. It is solely because eNom failed to honor its agreement with ICANN to require NameCheap to sign such a contract, that plaintiff is without the third party beneficiary protections contemplated by the ICANN Agreement. In sum, NameCheap's knowledge of the requirements of the ICANN Agreement cannot possibly relieve eNom of any liability it has for its primary wrongful role in leaving victims such as plaintiff without the protections contemplated by the ICANN Agreement.

**D.  eNom's Wrongful Conduct In Routinely Violating The ICANN Agreement is Unquestionably Harmful to the Public and Meets The Requisite Elements For An "Unfair Or Deceptive Practice" Under Washington's CPA**

At p.5, lns. 3-7 of its Opposition, eNom cites the following four factors identified by this Court in order to establish a claim under Washington's Consumer Protection Act:

> "(1) that the defendant committed an unfair or deceptive act; (2) that the act occurred in the conduct of trade or commerce; (3) that the act had an impact on the public interest; and (4) that the unfair or deceptive act caused injury to plaintiff's business or property."

All of these criteria are readily met by plaintiff's new claim (Count XI) of the Third Amended Complaint.

8

PRG7362.DOC

**(1) An "unfair or deceptive" act.** First, by allowing Registered Name Holders to register domain names through it as its resellers without accepting the responsibilities intended by ICANN to be accepted by all Registered Name Holders, eNom unquestionably committed an unfair or deceptive act.

eNom's violation of the ICANN Agreement is certainly an *unfair* business practice because, as a business practice, it is alleged to routinely dishonor the agreement it entered into with ICAAN, a quasi-public entity acting in the public interest, to require eNom's Registered Name Holders who provide privacy services to enter into agreements including the provisions of ¶ 3.7.7.3 of the ICANN Agreement. In so doing, it gains an unfair advantage over its competitors (i.e., competing registrars who honor their obligations under the ICANN Agreement), and it also unfairly deprives the victims of domain name fraud (and other acts of malfeasance committed by shielded domain owners, e.g., defamation, copyright violations, etc.) of the disclosure and deterrence protections intended for these victims by the ICANN Agreement.

It is also a deceptive business practice in that many of those who do business with those who conduct their businesses through their registered domains have a right to assume – and do assume – that all registrations are in compliance with the requirements of the ICANN Agreement, and all the protections that affords. However, unbeknownst to apparently anyone, eNom and its resellers (or at least reseller NameCheap) have deceived not only ICANN but, more importantly, those consumers and others who do business with those companies for whom NameCheap provides privacy service, by failing to insure the protections intended for those consumers and others by the ICANN Agreement.

The public has a right to presume, and many in fact presume, that the companies whose websites they use to purchase products or services or otherwise to conduct business transactions, are responsible citizens of the Internet community who comply with and abide by all applicable regulations designed for the public's

9

1  protection. ICANN is a primary instrumentality for providing that protection. One
2  of the key protections for the public contemplated by ICANN is the ability to
3  identify the owners of the companies with whom the public deals, or at least to have
4  the ability to do so upon a showing that such sites appear to have been used
5  fraudulently. To the extent eNom violates the ICANN agreement as alleged in
6  Count XI, it deceives those members of the public who believe they may fall back
7  on the disclosure protections offered by the ICANN Agreement when dealing with
8  owners of registered domains, in the event that the persons or companies they do
9  business with are perpetrating any type of fraud.

10  **(2) "In the conduct of Trade or Commerce."** Second, eNom's act of
11  deliberately failing to comply with the requirements of the ICANN Agreement
12  (presumably in order to increase eNom's attractiveness to resellers) is
13  unquestionably an act that occurs "in the conduct of trade or commerce." This is a
14  fundamental aspect of its business plan and it violates the ICANN Agreement anew
15  each and every time it registers a new domain for one of its resellers who continue to
16  act as Registered Name Holders for third parties to whom the RNH provides privacy
17  service.

18  **(3) Broad Adverse Impact on Public Interest.** Third, eNom's refusal to
19  comply with the requirements of the ICANN Agreement unquestionably has a
20  significant and adverse impact on the public interest. The ICANN Agreement (or at
21  least paragraph 3.7.7 thereof) was established, in part, to create protections for the
22  domain-registering and domain-using public against unscrupulous individuals who
23  would use their domains to commit a wide variety of wrongful acts harmful to the
24  public, including defamation, copyright violations, numerous types of frauds
25  (including, here, selling a website not actually owned by the seller), and various and
26  sundry other torts and statutory violations, all under the protection of anonymity. A
27  most common example is that of someone who may be selling a product at a too-
28  good-to-be-true price, but with no intent of ever actually delivering the paid for

PRG7362.DOC

product.  Paragraph 3.7.7.3 of the ICANN Agreement serves the same type of strong public interest in deterring frauds by disclosing the identities of the responsible people, which underlies statutes like California's Business and Professions Code §§ 17910 (which requires disclosure of the persons responsible for companies operating under assumed names, i.e., "dba's") and 17913 (describing the information required of such persons).  Washington, likewise, has a scheme providing similar protections; *see, e.g.,* RCW § 19.80.010.

The disclosure requirements of ¶ 3.7.7.3 of the ICANN Agreement have the salutary effect (or should have) of deterring some unlawful activity simply because if all anonymity services signed the ICANN-required contract with their Registrars, a healthy environment would be created where hackers and perpetrators of other types of fraud knew that they could not long hide behind the artifices of privacy services.

If the Registrars routinely do not require their Registered Name Holders to sign such agreements, the opposite environment is created, i.e., one where a Registered Name Holder has no incentive to comply with demands to reveal the identity of those using its services to commit fraud.  There is a very substantial purpose in forcing Registrars to require their Registered Name Holders to sign such agreements.  This affects the entire public and not merely those involved in limited and narrow circumstances.

Additionally, the broad public purposes served by enforcing ¶ 3.7.7 of the ICANN Agreement are not only deterrence, but also remedial.  In those situations where a Registered Name Holder does *not* promptly disclose the identity of its customers, the ICANN Agreement provides broad remedies available to any member of the public who has been unsuccessful in obtaining the information sought from a Registered Name Holder.

Moreover, the injury to the public from the type of wrong complained of in plaintiff's new CPA claim is far more widespread than the public injury at issue in

11

plaintiff's earlier rejected CPA claim. Plaintiff's earlier CPA claim had a far more limited public impact and would only affect those whose domains were actually stolen, and only to the extent that eNom did not promptly restore the stolen domain names. In contrast, eNom's routine non-compliance with ¶ 3.7.7 of the ICANN Agreement adversely affects a far broader segment of the public than only those whose domain names have been actually stolen. For example, it also affects any members of the public who have attempted to purchase products from a fraudulently maintained domain. The longer the perpetrator of the fraud has to operate before his or her identity is disclosed, the greater damage they accomplish.

In short, there is no question of public impact in regards to plaintiff's new CPA claim. eNom's wrongful actions in failing to comply with ICAAN's requirements have a *significant* negative impact in depriving the public of significant protections created for their benefit.

**(4)　eNom's act caused injury to plaintiff.** Fourth, eNom's unfair or deceptive act unquestionably caused injury to plaintiff's business or property. Because eNom failed to take the steps required of it by the ICANN Agreement (i.e., requiring NameCheap to sign a contract accepting the responsibilities of ¶ 3.7.7.3 of the ICAAN Agreement), plaintiff may be out hundreds of thousands of dollars due to its inability to hold NameCheap responsible for the damages caused by its customer (Doe) under a third party beneficiary contract theory which would otherwise be available to plaintiff.

For all the reasons above, the extent of injury to the public under the presently alleged cause of action is far greater than that in the one the Court previously rejected and, in that context, plaintiff believes that the Washington courts would unquestionably conclude that such conduct constituted an "unfair or deceptive act" within the meaning of the Washington CPA. Indeed, that statute, by its express terms, states that it should be given the most liberal possible interpretation. See

12

PRG7362.DOC

RCW 19.89.920, whose title is "Purpose -- Interpretation -- **Liberal construction** -- Saving," which provides as follows:

> "The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition.  It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce **or may substantially lessen competition**, determination of the relevant market or effective area of competition shall not be limited by the boundaries of the State of Washington.  **To this end this act shall be liberally construed that its beneficial purposes may be served.**
>
> "It is, however the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest . . . .." (Emphases added.)

In light of this statute, even assuming that the Court has correctly read the relevant Washington cases as requiring a showing of an act which is both unfair and deceptive, this statute supports a liberal construction of its scope in determining whether either of these two elements of that test is met.

Moreover, the quoted statutory provision above makes clear that a significant purpose of the statute is to deter acts which "**may substantially lessen**

PRG7362.DOC

1  **competition"** and that "**[t]o this end this act shall be liberally construed that its**
2  **beneficial purposes may be served.**" eNom's routine violation of the ICANN
3  Agreement has the effect of substantially lessening competition because it has a
4  huge advantage in competing with other registrars for the business of resellers who
5  provide privacy services, since those resellers who sign on with eNom needn't
6  undertake the same risks and obligations they would have to in signing on with other
7  more reputable registrars who comply with their agreed-to obligations under the
8  ICAAN Agreement.
9        For all these reasons, plaintiff has stated a proper claim under Washington's
10 CPA, and judicial relief is necessary to fully implement the salutary purposes of that
11 statute.

## IV

## PLAINTIFF'S REALLEGING ITS PREVIOUSLY REJECTED CLAIM IS SOLELY FOR PURPOSES OF PRESERVING IT FOR APPEAL

17       For two reasons, plaintiff reasserted, verbatim, its claim (Count V in the
18 proposed Third Amended Complaint) which this Court has already rejected as a
19 matter of law. First, this is an entirely different claim from the CPA claim which
20 plaintiff is presently asserting (in new Count XI) and plaintiff did not want to create
21 any confusion that its current amendment is simply a reworking of its earlier claim.
22       Second, plaintiff wants to preserve its earlier claim for appeal and was
23 concerned that if it withdrew it in its amended complaint it would be deemed to have
24 waived its right to appeal the Court's prior ruling rejecting that claim.
25       Of course, plaintiff considers itself bound by this Court's earlier ruling
26 rejecting that claim and does not intend to reassert it in connection with any further
27 district court proceedings on the merits in this case (at least about any new relevant
28 decisions by the Washington State courts)

PRG7362.DOC

**CONCLUSION**

For all the reasons above, eNom has failed to assert any proper basis for denial of plaintiff's motion for leave to amend.

Dated: August 7, 2009

John H. Weston
G. Randall Garrou
**WESTON, GARROU, WALTERS & MOONEY**

By: /s/
**G. Randall Garrou**
Attorneys for Plaintiff

15

PRG7362.DOC